UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 13-cr-20453

D-1 JOHN S. BENCHICK,

    Defendant.
                                                      /

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Defendant John Benchick, pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), requests an order compelling the government to provide him with (1) information related to Defendant's contention that the claimed inaccuracies in the loan applications were not "material"—including, but not limited to, the lending practices at Washington Mutual and National City, and (2) impeachment evidence regarding two individuals whom the FBI interviewed, and whom Defendant believes may receive consideration for favorable testimony at trial in the present matter. The motions have been fully briefed, and no hearing is needed. *See* E.D. Mich. Local R. 7.1(f)(2). For the reasons stated below, the court will deny Defendant's motion to compel discovery.

**I. BACKGROUND**

On June 13, 2013, the court arraigned Defendant Benchick on an indictment alleging Bank Fraud in violation of 18 U.S.C. § 1344. On October 1, 2013, the government filed a First Superseding Indictment pertaining to four mortgage loans. The

indictment alleged that Defendant "did knowingly and willfully execute, aided and abetted others in executing, a scheme or artifice to defraud and to obtain money, funds, or other property owned by, or in the custody or control of, federally insured financial institutions [Washington Mutual and National City,] by means of material false and fraudulent pretenses, representations or promises."  The indictment further alleged that Defendant inflated his income, falsely indicated that the mortgage property was his primary residence on the application for one of the loans, and caused his parents to inflate their income and falsely state that the mortgaged property was their primary residence on the applications for the other three loans.

## II.  STANDARD

Under Rule 16 of the Federal Rules of Criminal Procedure, the government must disclose, upon the defendant's request, documents that are material to preparing the defense.  Fed. R. Crim. P. 16(a)(1)(E)(i).  However, "[t]he rule provides no authority for compelling pre-trial disclosure of *Brady* material or of any other evidence not specifically mentioned by the rule."  *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988) (citations omitted).  In fact, "Rule 16 expressly exempts impeachment material subject to the Jencks Act from disclosure under its provisions."  *Id.* (citing Fed. R. Crim. P. 16(a)(2)).

Courts have also constructed constitutional rules in order to prevent a defendant's due process rights from being violated by the non-disclosure of specific types of evidence.  Under the *Brady* doctrine, the government must disclose, when requested by the defendant, evidence that is favorable to the defendant and material to guilt or punishment.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v.*

2

*Bagley*, 473 U.S. 667 (1985). For evidence to be "material," there must be a "reasonable probability that," if disclosed, "the result of the proceeding [will be] different." *Bagley*, 473 U.S. at 682.

### III. DISCUSSION

#### A. Evidence Relating to Lending Practices

As part of its case against Defendant, the government must prove that the claimed inaccuracies in the loan applications were "material." *Neder v. United States*, 527 U.S. 1, 25 (1999). The bulk of Defendant's motion revolves around his contention that the claimed inaccuracies in his loan applications were not material because "the loan applications were submitted when the lending culture at Washington Mutual and National City was such that anyone could get a loan, regardless of the content of the loan application." (Dkt. # 24, Pg. ID 89.) Consistent with this theory, Defendant argues that the government must disclose evidence related to the lending practices of Washington Mutual and National City because these lending practices demonstrate that his alleged misrepresentations were immaterial. (*Id.* at 95–98.)

In bank fraud cases, "a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing the decision of the decisionmaking body to which it was addressed.'" *Neder*, 527 U.S. at 16 (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). Further, "a misrepresentation may be material even if evidence demonstrates that the misrepresentation would not have actually influenced or actually deceived the lender." *United States v. Haisher*, No. 2:11-CR-00267-MMD-CWH , 2012 WL 5288006, at *3 (D. Nev. Oct. 24, 2012) (citations omitted).

3

> So long as a defendant, in order to cause a bank to take some action, makes a misrepresentation that a reasonable bank would consider important in deciding whether to act as the defendant wishes . . . the misrepresentation is material, even if the bank does not act as the defendant desires or does not actually rely on the misrepresentation in so acting.

*United States v. Menichino*, 989 F.2d 438, 440 (11th Cir. 1993) (citations omitted). "[I]t does not lie with one knowingly making false statements with intent to mislead . . . to say that the statements were not influential or the information not important." *Id.* (citations and internal quotation marks omitted). The materiality of any misrepresentation is measured against an objective standard, not the subjective impression of the person or entity to whom the misrepresentation was directed. *See United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) ("A statement or omission is 'capable of influencing' a decision even if those who make the decision are negligent and fail to appreciate the statement's significance.")

Numerous courts have rejected Defendant's theory. For example, in *Haisher*, the defendant sought to introduce "evidence that lenders would have granted the loans even if they were aware of alleged misrepresentations" in order to defend against his charges of bank fraud. *Haisher*, 2012 WL 5288006, at *3. The court rejected this theory, holding that in bank fraud cases, "the government need not prove that the victim relied on the false statements or was damaged by them." *Id.* (citing *Neder*, 527 U.S. at 24–25). "[I]t is no defense to wire fraud or bank fraud that the victim of the fraud was negligent, gullible, or incompetent." *Id.* (citations and internal quotation marks omitted).

Here, Defendant mistakenly asserts that the evidence he seeks is material to his guilt; *Hiasher* makes clear that it is irrelevant whether the banks actually relied on Defendant's alleged misrepresentations. Even if Washington Mutual and National City

4

were negligent in giving out the loans to Defendant, this evidence does not speak to Defendant's guilt.

*United States v. Ovist*, No. 3:11-CR-00076-BR, 2013 WL 119674 (D. Ore. Jan. 9, 2013) is also instructive. In *Ovist*, the defendant asserted that the alleged misrepresentations on his loan applications were not material because his lender's decisions to fund loans "were not based on the quality of the loans and the ability of the borrowers to repay them, but instead [the lender's] decisions were driven solely by the volume of loans that it could move to closing and then sell to Fannie Mae and Freddie Mac." *Id.* at *2–3. The court held that "the lender's alleged misconduct regarding their loan underwriting [was] irrelevant when determining whether Defendant made the alleged false statements with the intent to influence the lender's decisions." *Id.* at *2 (citing *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999)).

> Even if it [were] assumed . . . that the lenders' practice of disregarding their own loan underwriting criteria was so [pervasive] that the false statements with which Defendant [was] charged were irrelevant to the loan approval process, that evidence would bear only on the question whether the lenders actually relied on the false statements rather than on the materiality of the statements.

*Id.* at *2.

In the present case, Defendant makes an argument almost identical to the *Ovist* defendant. Here, Defendant argues that his alleged inaccuracies were not material because "the loan applications were submitted at a time when the lending culture at Washington Mutual and National City was such that anyone could get a loan, regardless of the content of a loan application." (Dkt. # 24, Pg. ID 89.) As *Ovist* makes clear, even if that were true, it "would bear only on the question whether the lenders actually relied

5

on the false statements rather than on the materiality of the statements." *Ovist*, 2013 WL 119674, at *2. Washington Mutual's and National City's supposed negligence in affording Defendant a loan does not speak to the materiality of Defendant's alleged misrepresentations.

In short, Defendant has not successfully shown that evidence relating to Washington Mutual's and National City's lending practices is relevant to the materiality of his alleged misrepresentations (and hence his guilt). The test for determining whether a misrepresentation is material is an objective standard; actual reliance is not required. Because Defendant's allegedly false statements could influence a bank's decision whether to approve a loan, Defendant's argument on materiality and his "blame-the-victim" approach fails.

### B. Impeachment Material for Possible Witnesses at Trial

In addition to evidence pertaining to Washington Mutual's and National City's lending practices, Defendant also requests that all impeachment material regarding individuals who may or may not testify at trial be disclosed. This request is premature.

Under *Brady*, the government has a due process obligation to provide defendants, upon request, all evidence in its possession that is favorable to the accused and material to guilt or punishment. *Brady*, 373 U.S. at 87. *Giglio v. United States*, 405 U.S. 150 (1972), extended *Brady* to include information concerning the reliability of key government witnesses. *Id.* at 154–55. However, *Brady* does not overcome the strictures of the Jencks Act. *See Presser*, 844 F.2d at 1283 ("[T]he government may not be compelled to disclose Jencks Act material before trial.") Under the Jencks Act, 18 U.S.C. § 3500, the government is not required to disclose witness or prospective

witness statements "until said witness has testified on direct examination in the trial of the case." *Id.* at § 3500(a).[1]

The Sixth Circuit has consistently held that defendants do not have a general pre-trial right to discovery of impeachment evidence when the prosecution denies that any such material is exculpatory and material under *Brady*. *Presser*, 844 F.2d at 1285; *see also United States v. Moore*, 439 F.2d 1107, 1108 (6th Cir. 1971). Even if the material sought for discovery is exculpatory, "the *Brady* doctrine is not violated if *Brady* material is disclosed in time for its effective use at trial." *Presser*, 844 F.2d at 1283 (internal quotation marks omitted). Further, the proper remedy for any tardiness in a disclosure is a request for recess. *United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004).

*United States v. Blood*, 435 F.3d 612 (6th Cir. 2006), is controlling. In *Blood*, the defendant alleged prosecutorial misconduct because he was not informed before trial of evidence that could impeach a government witness. *Id.* at 627. The court held that because the possibly impeaching evidence was elicited from the government witness at trial, and because this delayed disclosure did not result in prejudice, there was no due process violation. *Id.* "'Brady generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose.' . . . [A] 'delay only violates *Brady* when the delay itself causes prejudice.'" *Id.* (quoting *United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994)).

Here, the government has denied that possible witness statements contain any

---

[1] Because Defendant does not contest that the impeachment material he seeks is governed by the Jencks Act, the court assumes the Jencks Act applies.

material that is exculpatory or covered under *Brady*. (Dkt. # 25, Pg. ID 116.) Moreover, Defendant all but acknowledges that the impeachment evidence he seeks is not exculpatory, requesting material related to *possible* consideration the government afforded *possible* witnesses in exchange for "favorable testimony at trial." (Dkt. # 24, Pg. ID 88.) Defendant's speculation regarding the government's planned trial witnesses further demonstrates the prematurity of Defendant's request for impeachment material.

Additionally, even if the impeachment material sought were exculpatory, the government is only required to provide that information in time for its "effective use at trial." *Presser*, 844 F.2d at 1283. Defendant has made no showing that disclosure of the impeachment evidence is necessary for effective use at trial, and consequently, Defendant's request for disclosure of impeachment material is untimely.

### C. Right to Effective Assistance of Counsel and Right to a Fair Trial

Defendant contends that the evidence and impeachment material he seeks are necessary to uphold his right to effective assistance of counsel and his right to a fair trial. Because the court finds that the evidence sought by Defendant is immaterial to his guilt, and the government is not required to disclose impeachment evidence of possible witnesses before trial, the court rejects these claims without further discussion.

### IV. CONCLUSION

Defendant improperly seeks disclosure of evidence focused on the lending practices of the financial institutions who granted him loans. Such evidence is immaterial to Defendant's guilt. Additionally, Defendant's request for the government's disclosure of impeachment evidence is premature; disclosure is only required in time for

8

Defendant's effective use at trial.  Accordingly,

IT IS ORDERED that Defendant's motion to compel discovery (Dkt. # 24) is DENIED.

s/Robert H. Cleland<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  August 21, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 21, 2014, by electronic and/or ordinary mail.

s/Lisa Wagner<br>
Case Manager and Deputy Clerk<br>
(313) 234-5522