## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                  Case No. 13-20453

JOHN S. BENCHICK,

       Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND DENYING DEFENDANT'S MOTION FOR NEW TRIAL

Pending before the court is Defendant John S. Benchick's "Renewed Motion for Acquittal or in the Alternative, for a New Trial," filed on May 10, 2016. (Dkt. # 73.) The government filed a response to the motion ten days later. For the reasons stated below, the court will deny Defendant's Motion.

### I. BACKGROUND

Defendant was originally indicted on June 13, 2013, and charged with three separate counts of bank fraud under 18 U.S.C. § 1344. (Dkt. # 1.) Each count advanced two different theories of guilt, stating that Defendant "did knowingly and willfully execute, or aided and abetted others in executing, a scheme or artifice to defraud and to obtain money, funds, or other property owned by, or in the custody and control of, federally insured financial institutions by means of false and fraudulent pretenses, representations, or promises." (*Id.* at Pg. ID 2-3, 4, 6.) In two superseding indictments, the government added one more count of bank fraud as a principal (without pursuing the aiding and abetting theory) and one count of wire fraud under 18 U.S.C. § 1343.

(Dkt. ## 13; 52.) The charges arose out of a series of real estate transactions in which Defendant and his elderly parents were accused of lying on their mortgage applications. On April 28, 2016, a jury convicted Defendant on all counts. (Dkt. # 71.) Eleven days later, Defendant filed the instant action seeking judgment of acquittal or, in the alternative, a new trial. (Dkt. # 73.)

## II. STANDARD

The court may enter a judgment of acquittal if the evidence presented at trial is insufficient to support a conviction. Fed. R. Crim. P. 29. "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, [the court is] limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); citing *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). A court must therefore "draw all available inferences in favor of the jury's verdict." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998) (citing *United States v. Smith*, 39 F.3d 119, 121 (6th Cir. 1994)). Moreover, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'" *United States v.*

2

*Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).

Rule 33 allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Sixth Circuit gives trial courts broad discretion in determining whether to grant a new trial pursuant to Rule 33 because "'[t]he trial judge is in the best position to determine . . . appropriate remedies for any demonstrated misconduct.'" *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *Unite States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)). When a defendant rests his argument for a new trial on the basis of cumulative error, he must show that the "combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)) (finding only harmless error when a trial judge admitted hearsay statements of government agents); *see also Wheaton*, 517 F.3d at 361 (affirming a denial of a motion for new trial because no prejudice resulted from juror's misconduct in which the juror looked at a map to determine the distance between two towns).

### III. DISCUSSION

Defendant argues that he is entitled to judgment of acquittal on all counts. Each count will be addressed in turn.

### A. Bank Fraud: Counts 1, 3, and 4

Defendant argues that "a rational trier of fact could not have found [him] guilty of bank fraud as charged in Counts 1, 3, and 4 of the Second Superseding Indictment" as

3

either a principal or under an aiding and abetting theory. (Dkt. # 73, pg. ID 636, 638 (capitalization and bold omitted).) The court disagrees. To demonstrate bank fraud under 18 U.S.C. § 1344, the government must show "(1) the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) the defendant had an intent to defraud, and (3) the financial institution was insured by the FDIC." *United States v. Dowlen,* 514 F. App'x, 563 (6th Cir. 2013). "Intent to defraud means to act with intent to deceive or cheat for the purpose of causing a financial loss to another or bringing about a financial gain to oneself." *United States v. Olds,* 309 F. App'x 967, 972 (6th Cir. 2009).

Defendant's argument with respect to these three counts is ultimately a question of *mens rea.* He asserts that to support a conviction under an aiding and abetting theory, the government needed to offer evidence that "the Defendant's parents," as the alleged principals of the crime, "acted with intent to defraud," and that the government failed to do so. The court disagrees. As the Third Circuit has found, as long as there is evidence that a substantive criminal violation actually occurred, a jury is allowed to convict an aider and abettor while at the same time acquitting the alleged principals due to lack of intent. *United States v. Standefer,* 610 F.2d 1076, 1086-87 (3rd Cir. 1979). Even if that were not true, the court is satisfied that, based on the evidence presented at trial, a reasonable jury could have found that at least Defendant's mother intended to defraud. Defendant's mother's contradictory testimony regarding her signature and use of a middle initial, viewed in the light most favorable to the government, could have lead

a reasonable jury to conclude that she was – and remains – a willing participant in at least a portion of the fraudulent enterprise.

Defendant then argues that the evidence is insufficient to convict him as a principal because "the uncontroverted evidence presented at trial demonstrated that: (1) the Defendant's parents signed all of the closing documents on behalf of themselves; and (2) Defendant did not sign any of the loan applications." (Dkt. # 73, Pg. ID 638.) This argument is irrelevant. Defendant was indicted for and convicted of bank fraud, not signing a fraudulent mortgage application. As this case demonstrates, it is possible to "execute a scheme to defraud a financial institution" without personally signing on the dotted line. At trial, numerous witnesses testified that:

- Defendant selected the properties;

- Defendant negotiated the transactions;

- Defendant submitted the loan applications that contained materially false information (incorrect current and intended primary residences, incorrect employment history, inflated incomes, etc.).

Four witnesses involved in the fraudulent transactions – two loan officers, a realtor, and an accountant – testified that they interacted exclusively with Defendant, and had little or no dealings with his parents.

In light of this evidence, a reasonable jury could conclude that the parents were simply dupes, witting or unwitting, in a larger scheme masterminded by Defendant. *See United States v. Sheneman,* No. 10-100120, 2012 WL 2906859 (S.D. Ind. July 16, 2012) (noting that defendant had been found guilty of mortgage fraud despite not

5

signing the loan and closing documents because he "chose the properties, placed materially false statements in the loan applications, . . . and provided financial backing for the closings, helped schedule the closings, [and] directed his grandmother to sign the loan and closing documents.").

## B. Bank Fraud: Count 2

With respect to Count 2, Defendant likewise argues that the government failed to "establish[] beyond a reasonable doubt that Defendant acted with intent to defraud." (Dkt. # 73, Pg. ID 639.) As noted previously, "intent to defraud means to act with intent to deceive or cheat for the purpose of causing a financial loss to another or bringing about a financial gain to oneself." *Olds*, 309 F. App'x at 972. Specifically, Defendant claims that the government failed to "present any evidence" that he "acted with the intent to bring about a financial gain to himself." (*Id.* at Pg. ID 640.)

But the government presented more than enough evidence at trial for a reasonable jury to conclude that Defendant intended to financially profit from the transaction. When purchasing the house at 22080 Beck Road, Defendant submitted a fraudulent loan application, claiming he had a higher annual income than he actually had and indicating that he intended to live in the house full time, though he never actually did – a fact that further suggests that his other assurances were false. He then quit claimed the property to his mother for single dollar. This alone was a financial windfall. But then his parents refinanced the house, and Defendant obtained $219,660.80 from that refinancing within weeks.

6

Viewing this evidence in the light most favorable to the government, a reasonable jury could conclude that this series of events demonstrated that Defendant carried out this scheme with the intent to bring about a financial gain to himself. This satisfies the "intent to defraud" element. *Olds*, 309 F. App'x at 972. The court will deny Defendant's Motion with respect to Count 2 as well.

### C. Wire Fraud: Count 5

Defendant also argues that there was not sufficient evidence presented at trial to convict him of wire fraud. (Dkt. # 73, Pg. ID 642-45.) The court disagrees. The Sixth Circuit has held that "[t]he crime of wire fraud consists of three elements, each of which must be proven beyond a reasonable doubt: (1) that the defendant devised and willfully participated in a scheme to defraud; (2) that he used or caused to be used an interstate wire communication in furtherance of the scheme; and (3) that he intended to deprive the victim of money or property." *United State v. Cunningham*, 679 F.3d 335, 3790 (6th Cir. 2012) (internal quotations omitted).

First, Defendant seems to argue that he should be acquitted because the government did not prove every detail enumerated in the indictment. But courts have emphasized that the government only needs to prove "enough of the facts charged therein to satisfy the essential elements of the crime." *United States v. Potts,* 540 F.2d 1278, 1279 (5th Cir. 1976); *see also United States v. Russo,* 796 F.2d 1443, 1457 (11th Cir. 1986). Here, through the accumulated testimony of the Douglas Knoerr, Defendant's ex-girlfriend, Defendant's accountant, and Agent Link, plus copies of the checks and wires, the government demonstrated beyond a reasonable doubt that (1)

7

Defendant conned Knoerr into sending him over $300,000; (2) for the purposes of investing in Defendant's purported development of an electric car and to pay for home repairs at 25 Sunset Bay; and that (3) said money, in whole or in part, was not used for those purposes but rather for Defendant's personal gain.

Second Defendant argues that the evidence demonstrates that the $100,000 Knoerr gave to Defendant specifically for the repairs of the Sunset Bay property were used for that purpose. This argument did not persuade the jury and does not persuade the court. At trial, Defendant provided receipts that total up to about $7,900 and two checks written to Home Depot that, combined, add up to about $7,600. Even if the jury were to believe Defendant's testimony that all of this money was spent on repairs to the Sunset Bay property, the combined total – approximately $15,500 – is a small fraction of the full amount sent by Knoerr to Defendant. Further, at trial Knoer testified that when he inspected the property, none of the repairs he had paid Defendant for had been completed. Based on this evidence alone, the jury could have concluded that Defendant was guilty of wire fraud.

**D. New Trial**

Finally, Defendant argues that he is entitled to a new trial because the verdict "is not supported by the manifest weight of evidence presented at trial." (Dkt. # 73, Pg. ID 646 (emphasis omitted).). The court rejects this argument for the reasons articulated above. The weight of the evidence was more than enough to support the verdict.

8

## IV. CONCLUSION

IT IS ORDERED that Defendant's Renewed Motion for Acquittal, or in the

Alternative, for a New Trial (Dkt. # 73) is DENIED.


        S/Robert H. Cleland                 
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 27, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 27, 2016, by electronic and/or ordinary mail.

        S/Lisa Wagner                   
Case Manager and Deputy Clerk
(313) 234-5522