**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.
                                                                        Criminal Case No. 13-20453
                                                                  Civil Case No. 20-11201

JOHN S. BENCHICK,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO VACATE CONVICTION**

In April 2016, a jury unanimously found Defendant guilty of four counts of bank fraud and one count of wire fraud in violation of 18 U.S.C. §§ 1344 and 1343. (*See* ECF No. 71, PageID.621-22.) On October 25, 2016, the court sentenced Defendant to 110 months imprisonment on all counts to run concurrently. (ECF No. 94.)

Defendant moves to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 154.) He claims he received ineffective assistance of counsel, citing various perceived errors and omissions in his counsel's performance. The government has filed a response, and Defendant has replied. (ECF Nos. 162, 168.) For the reasons stated below, Defendant's motion to vacate will be denied.

**I.  BACKGROUND**

In 2015, Defendant was indicted for multiple counts of bank fraud and a single count of wire fraud. (ECF No. 52.) In the indictment, the government alleged that Defendant orchestrated a bank fraud scheme in which he convinced two banks to issue

five mortgages on residential properties based on falsified applications in both his own and his parents' names by lying about their respective income, employment, and intent to occupy the homes. Further, the government alleged that he also committed wire fraud by convincing a naive "investor" to send him funds. (*Id*.) These fraudulent transactions totaled upwards of $7 million, and the cash-back nature of the mortgages meant Defendant received over $1.5 million in cash. (*Id*.) Defendant's trial lasted nine days. (*See* ECF No. 162, PageID.3500.) The jury ultimately found Defendant guilty of all counts. (ECF No. 71, PageID.621-22.) Subsequently, the court sentenced Defendant to 110 months of imprisonment. (ECF No. 94.)

Defendant appealed the ruling, sentencing, and restitution calculation. (ECF No. 95.) The Sixth Circuit subsequently affirmed each of these. *See United States v. Benchick*, 725 F. App'x 361 (6th Cir. 2018). In 2018, Defendant petitioned the Supreme Court for a writ of certiorari. (ECF No. 151, PageID.3429.) The Supreme Court denied his petition in 2019. (ECF No. 152, PageID.3430.) Defendant then filed the motion presently at issue, which has been fully briefed. (ECF No. 154.)

## II. STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). The Sixth Circuit has clarified that § 2255 provides three bases for a valid claim: "(1) an error of constitutional magnitude; (2) a

sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

The Sixth Amendment to the United States Constitution guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." Ineffective assistance of counsel, guaranteed under the Sixth Amendment's right to counsel, is a valid basis for suit under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such a claim falls into the first § 2255 category, errors of constitutional magnitude. *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (citing *Pough*, 442 F.3d at 964; *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

The Supreme Court laid out the framework for analyzing an ineffective assistance of counsel claim in *Strickland v. Washington,* 466 U.S. 668 (1984). The Court held that in order to prove ineffective assistance of counsel, a prisoner must show 1) "that counsel's performance was deficient" and 2) "that the deficient performance prejudiced the defense." *Id.* at 687.

For counsel to be "deficient," representation must "[fall] below an objective standard of reasonableness." *Id.* at 688. "[T]rial counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strategic choices made after a thorough

3

investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 689-90).

To show that an attorney's performance "prejudiced the defense," the Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *accord Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Defendant bears the burden to prove such a claim by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). The prisoner must come forward with verifiable allegations of fact sufficient to support an entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959). Mere legal conclusions are inadequate. *O'Malley*, 285 F.2d at 735; *Loum*, 262 F.2d at 867. A Defendant is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### III. DISCUSSION

Defendant's § 2255 motion claims ineffective assistance of counsel and relies on seven separate grounds for relief. The court will address each in turn.

### A. FDIC Status of Lenders

Defendant's first argument is that his attorney should have moved to dismiss the underlying charges of bank fraud because the lenders cited in the indictment were not FDIC insured financial institutions. (ECF 154, PageID.3441.) In support, Defendant cites *United States v. Banyan*, a recent case where the Sixth Circuit held that a defendant could not be charged with bank fraud under 18 U.S.C. § 1344 because the version of the statute, in effect prior to 2009, applied only to a loan fraudulently obtained from a "financial institution" which "had deposits that were [FDIC] insured." 933 F.3d 548, 552 (6th Cir. 2019). The *Banyan* court rejected the government's contention that mortgage companies at issue in the case were "banks [merely] because each of them is a wholly owned subsidiary of a bank." *Id.* Instead, the accompanying concurrence indicates that "loans originating with a subsidiary mortgage company" must at minimum be "shown to have a direct connection to the assets of the bank itself" for the bank fraud statute to apply. *See id.* at 556 (Oliver, J. concurring).

Here, Defendant's claim that the loan was not issued by an FDIC insured bank is not supported by the evidence. When asked about the status of both lenders on direct examination, FBI Special Agent Claudia Link noted that the deposits of both facilities were FDIC insured. (*See* ECF No. 115, PageID.1716.) Her testimony, in conjunction with Exhibits 160 (ECF No. 129-16), 161 (ECF No. 129-17), and 162 (ECF No. 129-18), satisfy the court in finding that Defendant's claim is not backed by sufficient evidence. The court cannot grant relief based on this argument. *See Valentine*, 488 F.3d at 333.

And even if the court were to assume, *arguendo*, that the government's evidence did not sufficiently establish that the loans at issue came from the FDIC insurance bank

5

itself and not a subsidiary, in 2016, the failure to raise such an argument would not have constituted ineffective assistance of counsel. "Nothing in the Sixth Amendment guarantees a criminal defendant that his trial counsel will accurately predict . . . any subsequent rulings by [an]. . . appellate court." *Valadez v. Stephens*, No. SA-15-CA-274-RP, 2016 WL 1306651, at *9 (W.D. Tex. Apr. 1, 2016); *see also Green v. United States,* 65 F.3d 546, 551 (6th Cir. 1995) (finding that a lawyer's failure to predict Sixth Circuit's approach to law did not constitute ineffective assistance of counsel); *United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009) ("Clairvoyance is not a required attribute of effective representation."). The *Banyan* decision cited by Defendant here was issued in 2019, about three years after Defendant's trial and well after his direct appeal had already been adjudicated by the Sixth Circuit. Plaintiff cannot reasonably rely on such yet-to-be-decided pronouncements. So, Defendant's trial counsel was not required to anticipate the Sixth Circuit's novel interpretation of 18 U.S.C. § 1344 to provide constitutionally adequate representation.

### B.     Exclusion of Potential Lay Witnesses

Defendant argues that his attorney's failure to subpoena and question "eighteen" potential witnesses amounted to ineffective assistance of counsel (ECF No. 154, PageID.3441-44.) Defendant's motion does not name or otherwise identify the majority of the purported eighteen witnesses whom, he argues, should have been called. The court therefore confines its analysis to the potential witnesses actually mentioned in Defendant's motion to vacate. Defendant's motion references seven individuals, including Laura Lynch McMahon, Dennis Murphy, Pat Murphy, Pat Tortora, Mark

6

Fitzpatrick, the Director of the U.S. Veterans Administration, and Debbie Schwartz, whose testimony he contends would have dramatically strengthened his defense. (*Id.*)

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" *Strickland*, 466 U.S. at 689. The court grants Defendant's attorney the presumption that the exclusion of certain witnesses fall within the realm of his strategic discretion. *See O'Malley*, 285 F.2d at 735. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" *Strickland*, 466 U.S. at 690.

In light of this discretion, "[t]o present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result." *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003). Here, Defendant falls well short of making such a showing regarding any of the proposed witnesses.

Defendant wished to call Laura Lynch McMahon to speak about her alleged actions following a previous civil suit against Defendant. (ECF No. 154, PageID.3441-42.) Defendant alleged that McMahon, "called her friend prosecutor Abed Hammoud [government's counsel at trial] to charge Benchick [sic] for bank [f]raud on the very issue that she lost in court" (*Id.*) It is unclear how this testimony would have changed the results of this trial, as it does not speak to Defendant's alleged innocence and Defendant himself testified about the problems that McMahon allegedly caused him. (*See* ECF No. 121, PageID.2654-55.) The trial transcript also indicates that Defendant's attorney subpoenaed McMahon and considered calling McMahon

7

depending on the prosecution's case in chief, but ultimately he chose not to call her. (*See* ECF No. 115, PageID.1699; ECF No. 154, PageID.3439.) The court defers to Defendant's attorney's strategic discretion in this matter.

Defendant's attorney did not subpoena Dennis and Pat Murphy. (ECF 154, PageID.3442.) Defendant claims that the Murphys would testify about their sale of the Beck Road property to Defendant and their subsequent construction deal. (*Id.*) The purchase of the property, however, does not indicate the purpose of the property. These transactions cannot definitively refute the government's claim that Defendant falsely indicated he or his parents would live in the Beck Road property to get residential mortgages approved. Defendant testified as to the nature of this deal, (*see* ECF No. 121, PageID.2635), so it would not be strategically unreasonable to avoid eliciting similar testimony from Dennis and Pat Murphy. The court again defers to Defendant's attorney's strategic discretion.

Defendant next argues that his attorney failed to subpoena Pat Tortora. (ECF No. 154, PageID.3442-43.) Defendant claims that Tortora would testify about his intention to purchase land from Defendant and subsequent revocation. (*Id*.) Defendant claims the testimony of Pat Tortora, Dennis Murphy, and Pat Murphy form the basis of his income on his mortgage applications. (*Id*.) However, bank representatives Brett Hellstrom and Kevin Kraft testified that the bank only considers what the applicant is making at the time he is filling out the form, not his ostensible future earnings. (*See* ECF No. 117, PageID.1945, 1979-80.) This being the case, the witnesses' proposed testimony about Defendant's potential future income would be irrelevant to the issue of fraud. The court defers to Defendant's attorney's strategic discretion in regard to calling the Murphys.

Defendant also wished to subpoena Mark Fitzpatrick to "show that he never met Benchick and only dealt by mail with [Defendant's father] JIB," and that "he based JIB's income on the pending sale." (ECF No. 154, PageID.3443.) Again, the bank representatives testified that the bank would not consider a pending transaction in their lending decision, only actual income, so proof of this pending sale would not be exculpatory in this case. Also, because Fitzpatrick only corresponded via mail, Fitzpatrick would not be able to absolutely verify the person with whom he corresponded. Finally, Defendant notes that his attorney did not know what the witness would say. (*Id.*) This fear of the unknown is once again a reasonable strategic consideration. The court leaves the decision to call this witness to the attorney's discretion.

Defendant requested that his attorney subpoena the Director of the United States Veterans Administration to testify about a 550 acre property in Holly Township he allegedly sold to the V.A. to open the Great Lakes National Cemetery. (*See* ECF No. 154, PageID.3443-44.) Defendant hints that this transaction indicates success in previous ventures. (*Id.*) Although it would reasonably indicate some real estate transactional success in the past, it does not indicate Defendant's success at the time of submission of the instant mortgage applications, which were based on income figures that the government demonstrated at trial were vastly inflated.

Finally, Defendant wished to subpoena realtor Debbie Schwartz, whom he claims would testify about her offer to purchase the Beck Road property in Northville, Michigan. (ECF No. 154, PageID.3444.) Defendant and several witnesses testified about Schwartz's business relationship with Defendant. (*See* ECF Nos. 117-118,

9

PageID.2084-85, 2115, 2124, 2222-23.) Considering these other sources of information and testimony, it is unclear how Ms. Schwartz's testimony would have made a difference in this matter. Thus, the *Strickland* test is unsatisfied. *See Malcum,* 276 F. Supp. 2d at 679.

Again, and in sum, *Strickland* grants attorneys a great degree of latitude to effectuate their preferred strategies. *See Strickland,* 466 U.S. at 690. Here, it appears that Defendant's proposed witnesses would have testified mainly about irrelevant details, past successes, or potential future sources of income. None of this supposedly important evidence would have countered or even addressed the government's core contention that the loans were issued based on falsified current monthly income figures that differed from the actual income of Defendant and his parents by orders of magnitude. The Sixth Circuit aptly summarized the extent of these misstatements:

> One application listed the senior Benchick as the self-employed owner of a company called "Cobe & Associates, LLC" earning $99,999 per month (or nearly $1.2 million per year). Another lists his monthly income as $95,000. An application the government claimed Benchick submitted in his mother's name notes her income of $45,000 per month, also with Cobe & Associates. On the application he submitted under his own name, Benchick declared monthly income of $60,000.
>
> At trial, the government presented actual tax returns for the Benchicks, revealing that all three made far less than claimed. According to these documents, John I. and Helen Benchick together made approximately $243,000 in 2005 and $359,000 in 2006 (all from passive sources, such as investments and Social Security). Benchick's own tax returns for this period each show negative incomes. Moreover, the government provided evidence—including testimony from Helen Benchick—that both parents had been retired for many years.

*See Benchick*, 725 F. App'x at 363.

Furthermore, even if calling the witnesses would have been helpful, Defendant's attorney seemed unsure about the substance of some of the proposed witness

testimony, so a cautious decision not to call them fell well within the bounds of reasonable litigation judgment. (*See* ECF No. 154.) In light of these details, Defendant has not shown that 1) "that counsel's performance was deficient" and 2) "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687. Defendant's attorney's reasonable decision to exclude certain witnesses, both listed and unlisted, would not be considered ineffective assistance of counsel.

### C.     Concurrent Litigation of Defendant's Civil Matter

Defendant argues that he wished to stay his civil lawsuit occurring in Clearwater, Florida against Doug Knoerr. (ECF No. 154, PageID.3445.) The civil suit included the same occurrence involved in the instant criminal matter, so it is not entirely irrelevant. (*See Id.*;  ECF No. 52, PageID.543-46.) However, Defendant fails to identify how the civil litigation prejudiced his standing in the criminal matter. Therefore, Defendant's attorney's failure to stay the civil lawsuit does not fulfill the *Strickland* test for ineffective assistance of counsel.

Secondly, Defendant expresses his dissatisfaction with his attorney's failure to introduce text messages exchanged between Mr. Knoerr and himself. (ECF No. 154, 3445.) In his view, the texts served as "exculpatory evidence." (*Id.*) Defendant's attorney did, in fact, argue  for the introduction of the text messages. (ECF No. 118, PageID.2237-38); (ECF No. 119, PageID.2417-19); (ECF No. 120, PageID.2440-45, 2479-80, 2497-99); and (ECF No. 121, PageID.2597-2601, 2690-92.) The court declined to grant these requests. (*See* ECF Nos. 118, 121). The text messages were hearsay, and therefore barred from consideration. The court's exclusion of the text messages is not an indication of any failure on the attorney's part.

### D. Defendant's Attorney's Alleged Unfitness to Practice Law

Defendant claims that his attorney failed to disclose that "he was unfit to practice law as he had severe medical and mental issues at 85 years of age." (ECF No. 154, PageID.3445.) Defendant proffers in generalities, and fails to identify any specific ailment which would have left his attorney "unfit to practice law." Defendant states, "[n]umerous people have pointed out to Benchick that Morganroth had lost his ability to think rationally and became increasingly paranoid." (*Id.*) Defendant fails to specify the source of this claim, and fails as well to produce any verifiable evidence to substantiate his vague and conclusory accusation. Defendant is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333.

Further, this court oversaw Defendant's trial and sentencing hearing. The court "may rely on its recollections of the trial in ruling on the collateral attack." *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). At that time, the court indicated that Defendant's attorney "had a plan of action" and his line of questioning was "absolutely logical and proceeded step by step". (ECF No. 92, PageID.1263-64.) There is nothing presented that persuades the court to the contrary of those observations now, years later; this is true even in the light of Defendant's counsel's admittedly advanced age.

### E. Exclusion of Certain Expert Witnesses and Avoidance of Certain Presentational Tools

Defendant claims that his attorney's failure to hire a handwriting expert and private detective constituted ineffective assistance of counsel. (*See* ECF No. 154, PageID.3445-46.) Defendant's reply brief further emphasizes this position; however, the

reply also clarified that the scope of this argument is limited to contesting Defendant's conviction under count four of the superseding indictment. (*See* ECF No. 168.) Count four alleged that Defendant either executed or "aided and abetted others" who executed fraudulent loan documents to purchase the Beck Road property in Northville. (*See* ECF No. 13, PageID.49-50.) He alleges that it was actually the real estate broker "Chris Apeland" who "falsified" the loan application "for some reason" by "fill[ing] in the monthly income of $95.000.00 per month." (ECF No. 154, PageID.3446.)

Defendant requested the services of Curt Baggett, a handwriting expert, who submitted an affidavit supporting Defendant's assertion that the person who signed his father's signature on the Beck Road loan application was "a different person." (*See* ECF No. 168-1, PageID.3611-23.) Even assuming, *arguendo*, that Defendant's expert is correct in his findings, Defendant's claim of ineffective assistance of counsel still fails.

First, the version of the facts Defendant presents in his own motion is internally inconsistent because his motion Defendant repeatedly argues the income information in the application was accurate, yet in this section he now claims the number was actually "falsified" by Apeland. (ECF No.154, PageID.3341, 3446.) Both of these propositions cannot be true.

Second, the language of the indictment makes it clear that it does not matter whether Defendant, his father, or someone else *physically signed* the "falsified" application. Defendant was charged with either executing or *aiding and abetting others* in executing the fraud. Hiring a handwriting expert would not have contradicted strong evidence of Defendant's involvement in the scheme. Defendant states in this reply brief that he "has never denied his mentoring the correct, accurate URLA [application]

13

submitted by [his father]." (ECF No. 168, PageID.3541 ) In his testimony at trial, Defendant also admitted to being at the closing with his parents, where he and his parents would have had the opportunity verify the accuracy of the documents before them. (*See* ECF No. 121, PageID.2648.) Regardless of whatever word Defendant chooses to accept, whether "mentor" or "orchestrate", his admissions are contradictory. Because Defendant was charged and convicted of either aiding and abetting his parents in committing bank fraud or doing it himself his current contentions do not aid in proving his alleged innocence.

Defendant also acknowledges that his attorney attempted to cross examine Chris Apeland to prove that the loan application was fake. (*See* ECF No. 116, PageID.1838-39.) Attorney Morganroth's decision to thoroughly cross-examine Apeland, in lieu of calling an expert does not constitute ineffective assistance of counsel. *See Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007).

Additionally, Defendant contends that his attorney failed to hire a private detective "to interview Benchick's witnesses [*sic*] and provide critical documents." (ECF No. 154, PageID.3446.) However, Defendant fails to identify these alleged witnesses and documents. Defendant must provide verifiable allegations of fact. *See Green*, 454 F.2d at 53. The court cannot grant Defendant relief under this contention.

Finally, Defendant seems to challenge his attorney's failure to provide charts and graphs digitally in lieu of using an enlarger/projector. (*See* ECF No. 154, PageID.3446.) This is a critique of style, not of substance. His attorney's decision to use the enlarger was reasonable and non-prejudicial, even if also somewhat "old school" given the rapid and ongoing advances in digital evidence presentation techniques. Not everyone loves

14

PowerPoint. *See*, *e.g.*, Doug Kessler, *Why I hate PowerPoint*, Velocity Partners (July 5, 2013), https://velocitypartners.com/blog/why-i-hate-powerpoint/ (emphasis in original) (offering the view that the author hates PowerPoint "because it is BAD SOFTWARE."); Becky R. Thorson, *How Not to Use PowerPoint in the Courtroom*, The Fed. Lawyer (July 2007), https://www.fedbar.org/wp-content/uploads/2007/07/sidebar-0607-pdf-1.pdf (advising attorneys to "think about going back to a flip chart" which is "still okay to use" if they are not confident operating PowerPoint and troubleshooting the inevitable technical issues).

This claim fails both prongs of the *Strickland* test.

### F. Review of Prosecution and Prosecutorial Conduct

Defendant alleges that government prosecutor had a "personal interest and bias against Benchick," (ECF, No. 154, PageID.3447-48,) and the government failed to "inform the court of their witnesses lies and perjury". (*Id*.) Defendant argues that his attorney's failure to remove the prosecutor and his attorney's subsequent failure to point out the prosecutor's alleged misconduct constituted ineffective assistance of counsel. (*Id*.)

Defendant is not entitled to relief when "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333. Defendant's claims of some kind of ability by a defendant's counsel to "remove" the prosecution's counsel are inherently incredible. They cannot be accepted as true. This being the case, Defendant cannot be granted relief on these grounds.

### G. Sentencing Hearing

Defendant claims that he received ineffective assistance of counsel during his sentencing hearing, due to the alleged inexperience and ignorance of his attorney's associate, Jeffrey M. Thomson. (ECF No. 154, PageID.3447.) Defendant's attorney at the time, Thomson, joined Morganroth and Morganroth, PLLC in 2008. *See Attorneys*, Morganroth & Morganroth, https://www.morganrothlaw.com/jeffrey-thomson.php (last visited July 27, 2022). At the time of the sentencing hearing, Mr. Thomson had seven years of experience at the firm. (ECF 162, PageID.3517.) Even if it were his first criminal trial and sentencing hearing, that does not indicate that his representation was presumptively ineffective. *See United States v. Brazil*, 07-cr-20531, 2015 WL 477186, at *12 (E.D. Mich. Feb. 5, 2015) (Ludington, J.) (citing *United States v. Lewis*, 786 F.2d 1278 (5th Cir.1986)). Considering the lack of evidentiary support cited by Defendant, Defendant's claim of ineffective assistance by Thomson is clearly conclusory, so Defendant is not entitled to relief based on this claim. *See Valentine*, 488 F.3d at 333.

### IV. CONCLUSION

Defendant has not stated a valid claim for relief under § 2255. His counsel did not provide ineffective assistance, nor was Defendant prejudiced by any imaginable deficiency in counsel's performance. *Strickland,* 466 U.S. at 687. Defendant has not substantiated claims under criminal law or the law of contracts. Accordingly,

IT IS ORDERED that Defendant's "Motion to Vacate Sentence Under 28 U.S.C. [§] 2255" (ECF No. 154) is DENIED.

s/Robert H. Cleland         /<br>
ROBERT H. CLELAND<br>
UNITED STATES DISTRICT JUDGE

Dated:  August 4, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 4, 2022, by electronic and/or ordinary mail.

                                        <u>s/Lisa Wagner                /</u>
                                        Case Manager and Deputy Clerk
                                        (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Criminal\13-20453.BENCHICK.MotionToVacate.AS.AAB.RHC.2.doc